UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARIANE L. o/b/o Z.R.T.,[1]

                                       Plaintiff,                Case # 22-CV-973-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.

## INTRODUCTION

Ariane L. ("Plaintiff") brings this action on behalf of her daughter ("Z.R.T.") pursuant to Title XVI of the Social Security Act.  She seeks review of the final decision of the Commissioner of Social Security that denied Z.R.T.'s Supplemental Security Income ("SSI") application.  ECF No. 1.  The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c).  ECF Nos. 7, 9.  For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

Z.R.T.'s application for SSI was filed with the Social Security Administration (the "SSA") in January 2021.  Tr.[2]  81-82.  Z.R.T. was alleged to have been disabled since May 2020 due to diabetes.  Tr. 82.  On May 4, 2022, Administrative Law Judge Ifeoma N. Iwuamadi ("the ALJ") issued a decision finding that Z.R.T. is not disabled within the meaning of the Act.  Tr.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter.  ECF No. 5.

10-28.  At the time of the ALJ's decision, Z.R.T. was sixteen years old.  Tr. 16.  On October 17, 2022, the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted).  The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted).

### II.     Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims.  *See* 20 C.F.R. § 416.924.  At step one, the ALJ determines whether the child is engaged in substantial gainful work activity.  *Id.* § 416.924(b).  If so, the child is not disabled.  If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of

impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Z.R.T.'s benefits application under the process described above. At step one, the ALJ found that Z.R.T. has not engaged in substantial gainful activity. Tr. 13. At

step two, the ALJ found that Z.R.T. has severe impairments of major depressive disorder, anxiety disorder with panic attacks, diabetes mellitus, obesity, and fatty liver.  *Id.*  At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment.  *Id.*  Next, the ALJ found that Z.R.T.'s impairments, alone or in combination, do not functionally equal a Listings impairment.  Tr. 14-27.  The ALJ concluded that Z.R.T. had a "less than marked" limitation in every domain, *id.*, except for "Moving About and Manipulating Objects," in which Z.R.T. had "no limitation."  Tr. 25.

## II.    Analysis

Plaintiff challenges the ALJ's analysis with respect to the domains of Attending and Completing Tasks, Caring for Self, and Health and Well-Being.

### a.    Attending and Completing Tasks

In the domain of Attending and Completing Tasks, the SSA considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them."  20 C.F.R. § 416.926a(h).  For adolescents, the following is typical:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

*Id.* § 416.926a(h)(2)(v).  An adolescent may have limited functioning if she is slow to focus on, or fails to complete, activities of interest; becomes easily frustrated and gives up on tasks that she is capable of completing; or requires extra supervision to stay engaged in an activity.  *Id.* § 416.926a(h)(3)(ii), (iv), (v).  An adolescent may also be limited in this domain if she cannot

"plan, manage time, or organize [her]self in order to complete assignments or chores." S.S.R. 09-4p, 2009 WL 396033, at *6 (Feb. 18, 2009). However, the only relevant limitations are those that "result from [the claimant's] medically determinable impairment(s)." 20 C.F.R. § 416.926a(h)(3).

In addressing the domain of Attending and Completing Tasks, the ALJ concluded that Z.R.T. has less-than-marked limitations. Z.R.T. was able to complete a variety of activities and tasks independently. Tr. 23. Z.R.T. did not receive treatment for attention problems. Tr. 19. She prepared snacks and simple foods on her own, travelled in her neighborhood and to school independently, enjoyed painting and drawing, and played video games. Tr. 23, 272. Z.R.T. was not enrolled in special education. Tr. 15. All four state agency consultants opined that Z.R.T. had less than marked restrictions in this domain, and consultative examiner Janine Ippolito, Psy.D., concluded that Z.R.T. was "able to sustain concentration and complete age-appropriate tasks" with no stated limitation. Tr. 272.

The ALJ acknowledged Z.R.T.'s low academic performance, but believed that those difficulties resulted from her "excessive absenteeism" rather than her impairments. *See* Tr. 22-23. As support, the ALJ cited a questionnaire from one of Z.R.T.'s teacher. Although the teacher had opined that Plaintiff had "very serious problem[s]" completing class assignments, working at a reasonable pace, and finishing assignments on time, Tr. 227, the teacher believed this was a result of Plaintiff's absenteeism, rather than an issue of ability. The teacher wrote that Z.R.T. "never has difficulty with instructions," can "express ideas in written form," and "seems to know what is going on in class while she is here." Tr. 226-27. But by February of the 2020-2021 school year, Z.R.T. already had forty-four days of absences and had completed "minimal, if any, work." Tr. 225. The teacher also noted that Z.R.T. had difficulty dealing with frustration,

and would "shut down" when "upset or angry."  Tr. 230.  In a subsequent questionnaire, the teacher noted no difficulties in any domain but again stated that "absenteeism is negatively impacting academic progress."  Tr. 309.

Plaintiff first argues that the ALJ "cherrypicked" portions of Dr. Ippolito's consultative opinion, specifically by failing to mention Dr. Ippolito's attention and concentration findings.  In her report, Dr. Ippolito observed that Plaintiff had "[i]mpaired" attention and concentration during the consultative examination, which she suspected was due to "learning difficulties."  Tr. 272.  It is evident that the ALJ did not ignore these findings, however, because she explicitly referenced them in her decision.  *See* Tr. 18.  Moreover, while Dr. Ippolito observed that Z.R.T. had some difficulty in the area of attention and concentration, she nonetheless concluded that Z.R.T. was "able to sustain concentration and complete age-appropriate tasks" with no stated limitation.  Tr. 272.  Thus, contrary to Plaintiff's argument, the ALJ properly considered Z.R.T.'s attention and concentration findings in the context of Dr. Ippolito's opinion as a whole.  *See* Tr. 18-19.

Plaintiff next asserts that the ALJ wrongly concluded that Z.R.T.'s absenteeism was independent of, rather than the result of, her impairments, and therefore erroneously disregarded Z.R.T.'s academic difficulties in assessing this domain.  The Court disagrees.

To be sure, there is some evidence linking Z.R.T.'s absenteeism to her impairments.  As Plaintiff points out, Z.R.T. had some excused absences for, among other things, medical appointments and injuries.  *See, e.g.*, Tr. 326-32.  But the majority are unexcused absences: during the 2021-2022 school year, Z.R.T. had seventeen days of excused absences and forty-four days of unexcused absences; during the 2020-2021 school year, Z.R.T. had two days of excused absences and seventy-eight days of unexcused absences.  Tr. 322, 332.

In any case, the record does not compel the conclusion that Z.R.T.'s unexcused absences are the result of her impairments. *See David H. v. Comm'r of Soc. Sec.*, No. 20-CV-1471, 2023 WL 2601968, at *2 (W.D.N.Y. Mar. 22, 2023). ("A claimant cannot obtain remand merely by citing evidence that arguably supports more restrictive limitation; she must articulate how the ALJ's contrary finding was erroneous." (internal quotation marks, brackets, and ellipsis omitted)). At the hearing, Z.R.T. and her father were fairly equivocal about the cause of her unexcused absences. Z.R.T. stated that she found it difficult to attend school—whether in-person or virtually—because she does not "wake up until [the] afternoon." Tr. 46. When the ALJ asked why, Z.R.T. responded, "I'm not really sure, it's kind of always been like that." *Id.* Z.R.T. indicated that she has difficulty hearing her alarm clock. *Id.* When the ALJ pressed further, asking whether Z.R.T.'s depression or anxiety "mad[e] [her] sleep until the afternoon," she replied, "Probably." *Id.* Later at the hearing, Z.R.T. suggested that she was overtired in the mornings due to her diabetes, *see* Tr. 47—though as the ALJ pointed out in the decision, Z.R.T. was not consistently incapable of attending school on time. *See* Tr. 27 (stating that, although Z.R.T. "testified to low sugars *every night*," she had "the capability to go to school" (emphasis added)). Regarding her absenteeism, Z.R.T.'s father testified that "there were lots of doctors' appointments at one time and then she was going back and forth from here to my mother's while I was out of town." Tr. 49. In addition, in the winter, Z.R.T.'s family participated in a nine- or ten-day religious ceremony. Tr. 49-50. Z.R.T.'s father also stated that he "usually ha[s] to wake her up because she don't really hear her alarm, even when it's right next to her." Tr. 50. In a questionnaire, Z.R.T.'s father wrote that Z.R.T.'s academic performance suffered "because she said she's tired a lot." Tr. 223.

Similarly, the medical opinions in the record are not consistent on this issue.  In May 2021, Z.R.T. complained of depression, anxiety, and sleep disturbance to her treating nurse practitioner, Patricia Lindner.  Tr. 366.  Z.R.T. was prescribed hydroxyzine. Tr. 372-73.  In June 2021, Z.R.T. had a follow-up with her treating providers.  Z.R.T. reported that she had failed to take hydroxyzine as prescribed, Tr. 370-71, and Z.R.T. was directed to take her medication and abide by healthy sleep practices. Tr. 373. There are no additional medical notes concerning treatment for Z.R.T.'s sleep disturbances.  During the consultative examination with Dr. Ippolito, Z.R.T. reported that her depression caused low energy.  Tr. 270.  Z.R.T.'s father reported to Dr. Ippolito that Child Protective Services had conducted an investigation due to Z.R.T.'s absences from school, which Z.R.T. ascribed to her attendance at family funerals and the family's religious ceremony, not to her depression.  *See* Tr. 271.  Dr. Ippolito opined that Z.R.T.'s psychiatric impairments did not interfere with Z.R.T.'s ability to "function on a daily basis," and she included no restrictions relating to Z.R.T.'s energy or absenteeism.  *See* Tr. 272.  Like Dr. Ippolito, none of the state agency consultants appears to have connected Z.R.T.'s absenteeism to her depression or anxiety.  *See* Tr. 86-88, 101-03.  Nor did the state agency consultants connect Z.R.T.'s absenteeism to her diabetes.  *See id.*

Thus, the ALJ was faced with a conflict in the record: whether Z.R.T.'s absenteeism resulted from her impairments.  "It [was] the ALJ's job to resolve conflicting record evidence," and in light of Plaintiff's and her father's equivocal testimony, as well as the opinions of Dr. Ippolito and the state agency consultants, the ALJ reasonably resolved that conflict against Z.R.T.  *David H.*, 2023 WL 2601968, at *2.  This Court must "defer to that resolution." *Id.*  In light of that finding, the ALJ could reasonably disregard Z.R.T.'s academic difficulties in this domain, insofar as such difficulties did not "result from [Z.R.T.'s] medically determinable

impairment[s]."  20 C.F.R. § 416.926a(h)(3).  Accordingly, Plaintiff is not entitled to remand on
this basis.

### b.    Caring for Yourself

In the domain of Caring for Yourself, the ALJ considers "how well you maintain a
healthy emotional and physical state, including how well you get your physical and emotional
wants and needs met in appropriate ways; how you cope with stress and changes in your
environment; and whether you take care of your own health, possessions, and living area."  20
C.F.R. § 416.926a(k).  For adolescents, the regulations provide:

> You should feel more independent from others and should be increasingly
> independent in all of your day-to-day activities. You may sometimes experience
> confusion in the way you feel about yourself. You should begin to notice
> significant changes in your body's development, and this can result in anxiety or
> worrying about yourself and your body. Sometimes these worries can make you
> feel angry or frustrated. You should begin to discover appropriate ways to express
> your feelings, both good and bad (e.g., keeping a diary to sort out angry feelings
> or listening to music to calm yourself down). You should begin to think seriously
> about your future plans, and what you will do when you finish school.

*Id.* § 416.926a(k)(2)(v).  An adolescent may have limited functioning if she cannot use
"problem-solving skills to deal with a stressful situation," S.S.R. 09-7p, 2009 WL 396029, at *3
(Feb. 17, 2009), or if she does not "dress or bathe [her]self appropriately for [her] age," does not
"spontaneously pursue enjoyable activities or interests," or has "disturbance[s] in eating or
sleeping patterns."  20 C.F.R. § 416.926a(k)(3)(iii), (v), (vi).

The ALJ concluded that Z.R.T. had a less than marked limitation in this domain.  Tr. 26.
Z.R.T. is able to dress, bathe, and groom herself.  Tr. 272.  She can help with household chores
and is able to prepare food and travel within the neighborhood independently.  *Id.*  While there
was evidence that Z.R.T. had difficulty dealing with frustration at school, the ALJ believed that

"everything else is [a] slight problem so no more than less than marked." Tr. 27.  Moreover, there was "improvement with therapy and medication." *Id.*

Plaintiff asserts that the "ALJ's review of [the] evidence relied on cherry-picking." ECF No. 7-1 at 10.  Plaintiff notes that there was evidence to support a more significant limitation: Z.R.T. expressed suicidal thoughts, and the medical records show that Z.R.T. has occasionally had difficulty remembering to take medications and attend appointments. *See id.* at 10-11.

Contrary to Plaintiff's argument, the record reflects that the ALJ considered these matters.  Z.R.T. only expressed suicidal thoughts at one appointment, indicating that she "has no plan." Tr. 284.  She denied suicidal thoughts elsewhere in the record. *See* Tr. 270-71.  The ALJ acknowledged this evidence. Tr. 17.  The ALJ likewise considered the fact that Z.R.T. had some difficulty complying with her diabetes treatment protocols. *See* Tr. 27.  The ALJ disregarded such noncompliance because Z.R.T. testified at the hearing that she is now taking her medication regularly. *Id.*; *see also* Tr. 46.  Finally, it is clear that the ALJ reviewed and considered the treatment notes that Plaintiff cites to suggest Z.R.T. had difficulty attending appointments. *See* Tr. 17, 18; *see also* ECF No. 7-1 at 11.

Therefore, the Court is not persuaded by Plaintiff's claim that the ALJ cherry-picked or otherwise ignored favorable evidence.  More importantly, as the Court previously stated, Plaintiff cannot obtain remand "merely by citing evidence that arguably supports more restrictive limitation." *Pamela R. v. Comm'r of Soc. Sec.*, No. 21-CV-30, 2022 WL 17584195, at *6 (W.D.N.Y. Dec. 12, 2022) (internal quotation marks omitted).  "[S]he must articulate how the ALJ's contrary finding was *erroneous*." *Id.* (internal quotation marks, brackets, and ellipsis omitted).  Because Plaintiff does not meaningfully articulate why the ALJ's finding in this domain was erroneous—besides simply citing some contrary evidence—remand is not

warranted.  *See id.* ("[U]nder the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position.").

        **c.**     **Health and Well-Being**

Plaintiff also challenges the ALJ's analysis with respect to the domain of Health and Well-Being.  *See* ECF No. 7-1 at 11-12.  She again argues that the ALJ "improperly cherry-picked evidence" insofar as the ALJ ignored the evidence that "Plaintiff missed school due to her impairments including treatment."  *Id.* at 12.  For the same reasons stated in Section II(a), *supra*, this argument is rejected.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 5, 2023
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York